**FLORIDA OUTDOOR ADVERTISING, LLC, a Florida limited liability company, et al., Plaintiff,**

v.

**CITY OF BOCA RATON, Florida Defendant.**

No. 018504CVMIDDLEBROOKS, 01–8504–CIV–BANDSTRA.

United States District Court, S.D. Florida.

Jan. 14, 2003.

Gary Ray Rutledge, John Ross Ellis, Rutledge Ecenia Purnell & Hoffman, Tallahassee, FL, Thomas Richard Julin, Dorothy Patricia Wallace, Hunton & Williams, Miami, FL, for Plaintiff.

Sheri Alden Fack, Miami, FL, Diana Grub Frieser, Boca Raton, FL, Jamie Alan Cole, City Attorney, Matthew Harris Mandel, Weiss Serota Helfman Pastoriza, Fort Lauderdale, FL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon Plaintiff Florida Outdoor Advertising LLC's Motion for Summary Judgment (DE # 46), filed on October 15, 2002, and Defendant City of Boca Raton, Florida's Cross–Motion for Summary Judgment (DE # 56), filed on November 8, 2002. The motions have been fully briefed and are ripe for resolution.

I have reviewed the extensive factual submissions, the excellent memoranda filed by both parties and heard oral argument. At argument, counsel agreed that there were no disputed factual issues and that the case should be determined as a matter of law.

### I

### Background

The Plaintiffs are in the business of leasing or purchasing real estate upon which they erect and maintain billboards and, in turn lease space on the billboards for advertising purposes. Daniel Hardin is the sole owner and president of Florida Outdoor Advertising, LLC and Hardin Holdings, Inc. (collectively, "FOA LLC") and was the sole owner and president of a predecessor Florida Outdoor Advertising, Inc. ("Florida Outdoor"), which no longer exists. The Defendant, the City of Boca Raton ("the City"), is a municipality located in Palm Beach County, Florida.

In the fall of 1999, Hardin was looking for sites along the I–95 Corridor in South Florida for the purpose of installing advertising signs. He identified a location in the City zoned for industrial use which was owned by Museum Center Corp. ("Museum") and leased to TravelPro International, Inc. ("TravelPro") which was conducting business on the premises.

FOA LLC's predecessor contacted TravelPro seeking the possibility of erecting an outdoor advertising sign at the Museum property. Prior to contacting TravelPro, Daniel Hardin had reviewed the city's then existing Sign Code, and after consulting with legal counsel, determined that the Sign Code did not allow the billboard Florida Outdoor planned to erect.

Florida Outdoor informed TravelPro, but not Museum, that its proposed billboard was prohibited by the City's ordinance.[1] Florida Outdoor told TravelPro that "by virtue of another development project in Boca Raton our company is working on, we believe it may be possible to be issued an advertising sign permit." However, at the time, Florida Outdoor had neither applied for, nor discussed with any staff, any off-premises sign and did not tell TravelPro that it intended to file a lawsuit against the City to receive a sign permit.

On November 18, 1999, Florida Outdoor entered a lease agreement with TravelPro which subleased the Museum property "solely for the purpose of executing, operating, and maintaining an outdoor advertising structure." The rent was to be $12,000 per annum payable monthly in advance beginning upon completion of the sign. Florida Outdoor paid TravelPro a $250 non-refundable development fee.

On December 17, 1999, Florida Outdoor submitted an application for a permit to construct one off-premise outdoor advertising sign on the land leased from TravelPro. Cori Barnes, Florida Outdoor's office manager, filled out the City of Boca Raton Application for a Building Permit and the City of Boca Raton Application for a Sign Permit, and sent them to Donald Wetherington, a certified licensed general contractor for signature. Upon receiving the applications in his St. Cloud office, Mr. Wetherington signed them and returned them by Federal Express to Florida Outdoor in Ft. Lauderdale.

The applications were subsequently notarized by Ms. Barnes, a licensed notary, despite the fact that she was not present when Mr. Wetherington signed the applications. Furthermore, Ms. Barnes added information to the forms outside of Mr. Wetherington's presence after he signed the forms—without Mr. Wetherington attesting to the added information.

On January 21, 2000, the City denied Florida Outdoor's application for a sign permit. Because the applications submitted were for an "off-premises" advertising sign, the City treated the applications as seeking a commercial sign and denied the applications on that basis. After the City denied the applications, neither Florida Outdoor nor its successor ever resubmitted the applications specifying that the proposed sign would be for non-commercial speech.

On January 24, 2000, three days after the applications had been rejected by the city, Florida Outdoor and TravelPro entered into another agreement for the Museum property. Mr. Hardin drew a line through the November 18, 1999 lease, wrote on the document, "Null and void in favor of Lease Agreement dated January

---

1. TravelPro's lease with Museum required Museum's prior written approval before any changes or improvements could be made to the property. The lease further provided that the property was subject to a recorded Declaration of Covenants that provided that no freestanding sign on the property be larger than six feet by ten feet.

24, 2000," affixed his signature to the "null and void" declaration and sent the voided November 18, 1999 lease to TravelPro. The January 24, 2000 lease contained the approval and signature of Museum, and both Florida Outdoor and TravelPro's signatures were witnessed.[2] The rent was increased from $12,000 to $18,000, and rent payments were to be made annually rather than monthly, renegotiated at each renewal period.

On or about February 10, 2000, Florida Outdoor merged into Hardin Holdings, Inc. Through the merger, Hardin Holdings, Inc. acquired all the rights, privileges, immunities, and franchises, and all the property, real, personal and mixed of Florida Outdoor. On March 1, 2000, Harding Holdings, Inc. assigned to Florida Outdoor Advertising, LLC, all of Hardin Holdings Inc.'s right, title, and interest in and to the lease that Florida Outdoor had with TravelPro and any cause of action that had arisen in favor of Florida Outdoor against the City through the City's denial of Florida Outdoor's permit application.

On March 22, 2000, Hardin wrote a letter to the City asserting that provisions of the Sign Code were unconstitutional. The City revised its sign ordinance on July 10, 2000, adopting Ordinance No. 4518.

## II

### Standard of Review

The standard to be applied in reviewing summary judgment motions is contained in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment may be entered only where there is *no* genuine issue of material fact. The moving party bears the burden of meeting this standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). As the Eleventh Circuit has explained:

> In assessing whether the movant has met [its] burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. 1598; *Marsh,* 651 F.2d at 991. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.,* 655 F.2d 598 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic,* 669 F.2d at 1031; *Croley v. Matson Navigation Co.,* 434 F.2d 73 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598; *Marsh,* 651 F.2d at

---

**2.** The signatures in the November 18, 1999 lease were not witnessed.

991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir. 1967). *See Dalke v. Upjohn Co.,* 555 F.2d 245, 248–49 (9th Cir.1977). *Clemons v. Dougherty County,* 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486 (11th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

## Analysis

This is another in a series of cases brought by outdoor advertising companies against municipalities alleging violation of the First Amendment. The now familiar strategy is to apply for a permit for erection of a billboard knowing full well that the permit will be denied under the city's existing sign ordinance but also aware that the ordinance is subject to legal attack. This vulnerability to challenge exists because the sign ordinances in many Florida municipalities until recently prohibited off-premise noncommercial advertising with certain limited exceptions. Such ordinances, theoretically at least, favored commercial speech and therefore constituted content-based discrimination in violation of the First Amendment. *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). I say "theoretically" because there seems to be no history of Florida cities applying these ordinances to ban noncommercial speech and the reality is that most billboard advertising is commercial.

The City of Boca Raton, like most Florida cities, has enacted a new ordinance correcting the deficiencies of the old. Yet, Florida Outdoor Advertising, wielding the cudgel of the First Amendment on behalf of noncommercial advertisers (few as they might be), continues to wage a facial challenge to the old ordinance.

Ordinarily, one might ask: if the city has passed a new ordinance, what does it matter that its old ordinance discriminated against noncommercial speech? However, in addition to its heartfelt concern about the First Amendment value of noncommercial speech, Florida Outdoor has its own very commercial self-interest at stake.

For while the First Amendment issues in this case are interesting and difficult, the case is really about the use of the concept of vested rights to create a window of opportunity to build a large (sixteen feet by forty-two feet) and valuable billboard which would not be approved under the old or the new ordinance. The linchpin of this strategy is an unpublished opinion of the Eleventh Circuit which has been followed by this Court. *See Nat'l Adver. Co. v. City of Fort Lauderdale,* Case No. 92–4750, 8 F.3d 36, 1993 WL 444061 (Table) (11th Cir.1993); *Fla. Outdoor Adver., LLC v. City of Boynton Beach,* 182 F.Supp.2d 1201 (S.D.Fla.2001); *Wilton Manors Street Systems v. City of Wilton Manors,* No. 00–6186–Civ–Ungaro–Benages, 2000 WL 33912332 (S.D.Fla. Dec. 5, 2000). In *National Adver. Co.,* the Eleventh Circuit held that a billboard company had a vested right to issuance of a permit without the necessity of a showing of reliance where, when it applied for the permit and was denied, the city had no valid prohibiting ordinance since the existing ordinance was unconstitutional.

According to counsel for the City, the Plaintiffs "are seeking to assert vested rights as a legal loophole . . . ." While I am no fan of lawyer jokes, this case brings to mind the story of the lawyer on his death bed in the hospital. A friend comes in to visit and finds the lawyer frantically leafing through the Bible. "What are you

doing?" the visitor asks. The sick lawyer replies, "I am looking for loopholes."

Faced with what it perceives to be an argument based upon a loophole, the City went searching for a technicality of its own.

In scrutiny of the application for the permit, and the circumstances surrounding its submittal, the city uncovered a defect, the seriousness of which is debated by the parties.

FLA.STAT.ANN. § 713.153(6) (2002) sets forth the form of a building permit application and states that the contractor for the proposed work must sign the building permit application and have it properly notarized. Furthermore, section 19–24(4) of the City Code required that a building permit application to the City "shall be signed by the qualified applicant in the space provided on the form, before either the chief building code administrator or before an officer duly qualified to administer oaths." Florida law also provides that "a notary public may not notarize a signature on a document if the person whose signature is being notarized is not in the presence of the notary public at the time the signature is notarized. FLA.STAT.ANN. § 117.107(9) (2002). In addition, § 117.107(7) prohibits a notary from making changes to a document after it is signed.

It is undisputed that the contractor for the proposed sign did not sign the permit application before a notary. Instead, the application was later notarized by the office manager for Florida Outdoor at a time the contractor was not present. She also made changes to the application after he had signed it and without his having acknowledged or attested to the changes.

While the parties agree that the application was not notarized in accordance with Florida law, they disagree as the consequences. The City argues that vested rights were not obtained since the application did not comply with existing state and local laws, apart from the challenged sign ordinance. Florida Outdoor contends that defects in the notarization of the application do not invalidate the application itself.

The City relies upon *Summa Investing Corp. v. McClure*, 569 So.2d 500 (Fla. 3d DCA 1990). In that case Raymond E. Bellamy, the owner of property, executes a mortgage in favor of Daniel and Corrine A. McClure. Bellamy's signature was witnessed and notarized by Corrine McClure, a co-mortgagee. Under Florida law, a notary is not qualified to acknowledge signatures where she has a financial interest in the proceedings or will acquire such interest under the document to be acknowledged. The Third District Court of Appeal stated that by reason of the defect in its execution, the mortgage was not entitled to be recorded, and the fact that it was actually recorded was a nullity with no legal effect. Therefore, the court held, the mortgage at issue "while enforceable between the McClures and Bellamy, was not entitled to recordation, was not constructive notice to subsequent purchasers for value, and, accordingly, should not have been foreclosed." *Id.* at 502. *See also Hutchinson v. Stone*, 79 Fla. 157, 84 So. 151 (Fla.1920) (holding that under the then existing constitutional requirement that alienation of homestead be "duly executed," a notarization of signature where the party executing the mortgage was not present before the notary but instead acknowledged her signature by telephone was ineffectual).

Florida Outdoor, in turn, relies upon two other cases: *Kozacik v. Kozacik*, 157 Fla. 597, 26 So.2d 659 (Fla.1946) and *Harris v. Walbridge*, 488 So.2d 881 (Fla. 1st DCA 1986). However, since they are both grounded on principles of estoppel, these cases are markedly different.

For instance, in *Kozacik*, a party to a contract sought to disavow the contract

because it was not executed in the presence of subscribing witnesses as required by law. The Supreme Court held that except for the formality of processing subscribing witnesses, the contract was regular, definite, and certain and further, that the parties had acted under it by transferring possession, making the down payment, and paying the monthly installments. Therefore, the Court stated "in equity [the purchaser] is regarded as the beneficial owner and will be entitled to deed upon full performance of the contract." *Id.* at 602, 26 So.2d 659.

In *Harris,* the First District Court of Appeal considered whether a husband and wife, who admittedly executed a note and mortgage, could collaterally attack the mortgage because they did not sign it in the presence of a notary. The notary testified that: the actual homeowner, the couple's son, whom she knew, asked her to witness and notarize the mortgage; that she refused to do so unless his mother and father acknowledged they did sign the mortgage; that she was given their phone number and called them, and that she, upon their acknowledgment that she had signed the note and mortgage, notarized it. The First District found that (1) the money would not have been advanced unless the couple executed a promissory note secured by a mortgage; (2) that the couple was informed of the reason for execution of the mortgage; (3) that the couple signed the note and the mortgage; (4) that the money was advanced on execution; and (5)

there was no fraud or duress on the part of the lender or notary. The court held that "[t]hese factors clearly constitute estoppel so as to preclude [the couple] from denying the validity of the mortgage." *Id.* at 885.

The cases advanced by Florida Outdoor are inapposite because estoppel is not implicated here. The notary was employed by Florida Outdoor which controlled the procedures employed in submitting the application. *Summa Investing Corp.* is the more pertinent authority. Moreover, if equity is to be invoked, and the Eleventh Circuit's decision in *Nat'l Adver. Co.* is premised on notions of fairness and equity, these consideration cut against Florida Outdoor. *See Nat'l Adver. Co.* at 8 (quoting *Southern Co-op. Dev. Fund. v. Driggers,* 696 F.2d 1347 (1993) ("It would ... be inequitable to permit the defendants to take advantage of a new law enacted while an application ... valid when filed, has been unlawfully delayed. This result would not be right."). Particularly where the city's denial of the permit was not based upon the deficiencies of the ordinance subject to challenge and where the anticipated denial was part of a strategy to construct a nonconforming sign, it does not seem unfair to expect Florida Outdoor to abide by other requirements of law. As a result of the deficiencies in the application process, specifically proper acknowledgment of its application for a permit, vested rights were not obtained.[3]

For the foregoing reasons, it is

---

**3.** The City also argues that since the November 18, 1999 lease was not executed in accordance with Florida law and was in violation of the master lease between Museum and TravelPro and, further, was deemed null and void by the parties and superseded by the Jan. 24, 2000 lease it cannot rise to a legally recognizable interest which is a prerequisite to asserting a vested right. These arguments further support a conclusion that no injustice results from failing to find vested rights. The

City also requests that I reconsider the views previously expressed in *Florida Outdoor Advertising v. City of Boynton Beach, supra,* concerning content discrimination because of the Supreme Court's recent decision in *Thomas v. Chicago Park Dist.,* 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002). In view of my conclusion with regard to vested rights it is not necessary to reach the constitutional issues.

ORDERED AND ADJUDGED that the City of Boca Raton's Cross–Motion for Summary Judgment (DE #56) is GRANTED. It is further

ORDERED AND ADJUDGED that Florida Outdoor Advertising LLC's Motion for Summary Judgment (DE #46) is hereby DENIED. It is further

ORDERED that this case is CLOSED. Final judgment shall be entered in favor of the Defendant. All pending motions are hereby DENIED AS MOOT.[4]

---

4. Namely, Plaintiff's Motion to Amend Witness List (DE #47), Plaintiff's Motion for Hearing on Motion for Summary Judgment (DE #48), Plaintiff's Motion for Trial by the Court (DE #54), and Defendant's Motion to be Excused (DE #82).