**NATIONAL ADVERTISING COMPANY, Plaintiff,**

v.

**CITY OF MIAMI, Defendant.**

**No. 02–20556–CIV.***

United States District Court,
S.D. Florida,
Miami Division.

Sept. 26, 2003.

* Case number 01–3039–CIV–KING and 02–20556–CIV–KING were consolidated under case number 01–3039–CIV–KING. For the sake of clarity, the Court has entered two (2) separate Orders that dispose of both cases in their entirety.

Thomas R. Julin, Esq., Hunton & Williams, Miami, FL, for Plaintiff.

Carol A. Licko, Esq., Hogan & Hartson, LLP, Miami, FL, for Defendant.

## MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT

KING, District Judge.

National Advertising Company, mistakenly believing that the permitting experts they employ to apply for billboard permits, had laid the essential predicate to enable their lawyers to file a constitutional challenge to the City of Miami Zoning Ordinance, filed this suit on February 21, 2002 In National's rush to the courthouse, they neglected to obtain a denial of the six permit applications they had partially processed through the City of Miami Building and Zoning Department. Waiting only to hear from a zoning clerk "he said for my future benefit, signs are not allowed in the C–1 zone. If it had been in the C–2 zone, the applications we submitted were for signs that were too tall for that zone."[1]

1. Testimony of Joseph Howard Little, Director of Real Estate for Florida, Georgia and the Carolinas for Plaintiff National Advertising Company testifying regarding the process National utilized in submitting the applications to the City on December 26, 2001:

Q. After the applications had been submitted to the City of Miami, what was the next step in attempting to obtain permits for these seven locations?

A. In January, we went down to the building department, City Hall, and walked the applications through the process.

Q. If you would explain to the Court, what is that process? What do you do to push the application through?

A. Each packet gets a registration number. You show up in the morning and you take it through several of the various stations that the building department has, electrical, public works, structure and zoning.

Q. Did you obtain approvals in that process for each of the applications that were submitted?

A. Of those six we took them through each of the stations and obtained approvals up until we came to the zoning station, the sign department.

Q. At the zoning station, what happened there?

A. In each of the instances they were denied. Mr. Cajina denied them.

Q. Did he explain to you why they were being denied?

A. He did on the first packet that I took. He said for my future benefit signs are not allowed in the C–1 zone. If they had been in the C–2 zone, the applications we submitted were for signs that were too tall for that zone.

\* \* \* \* \* \*

Q. After you had gotten the six applications denied, did you then submit the seventh application?

A. Yes, it was submitted to the City of January 9.

Q. What action, if any, did the City take with respect to the seventh sign application?

A. At that time it took no action.

Q. The seventh sign application, was this for a sign in a different type of zone other than the six signs?

A. Yes, it was for a sign in a C–2 zone. It appeared to me that it conformed to all aspects of the ordinance at the time and should have been issued.

After receiving this rejection by the intake clerk during the walk through of the permit applications on January 8, 2001, National, without attempting to present the matter to the Building Official for consideration, or obtaining the written denial from the Building Official, went to their lawyer's office to commence premature preparation of this lawsuit.[2] This rush to the courthouse without making any effort to present the matter to the Building Official for approval or denial, and failing to get from the Building Official a final denial of the six building permit applications, constituted a fatal error mandating denial of the relief National here seeks. By treating a routine rejection by a zoning clerk of the billboard height, together with taking the clerk's volunteered words of advise for the future submission of the sign permit applications as a *denial,* National has failed in a very substantial and critical manner, to follow the law and thus is precluded from raising any constitutional issue or proceeding with any lawsuit without first meeting the basic requirement of a denial of a permit. Moreover, even if this Court were to address National's arguments on the merits, this Court has already upheld the constitutionality of the Zoning Ordinance in its Memorandum Opinion Granting Summary Judgment for the City, entered in National I, *National Adver. Co. v. City of Miami,* 287 F.Supp.2d 1349, 2003 WL 22455323 (S.D.Fla.2003).

(Tr. of the Evidentiary Hr'g at 14, 15 and 16, 08/28/02.)

**2.** Interestingly enough, the seventh application applied for on January 9, 2002, apparently met the qualifications and was granted. National Advertising Company did not see fit to resubmit the other six permit applications that had been rejected for further consideration. Had they resubmitted the applications and had they been granted, this entire lawsuit would have been avoided.

## I. Factual Background

Plaintiff National Advertising Company is a Delaware corporation and a wholly owned subsidiary of Viacom Outdoor Inc., a corporation formerly known as Infinity Outdoor, Inc. National is in the business of erecting and maintaining billboard signs on property it leases. According to its own statements, National maintains both commercial and noncommercial messages on billboards that are located throughout the City of Miami.

On March 8, 1990, pursuant to section 166.011 *et seq.,* Florida Statutes and Sections 3(4), 14, & 72 of its City Charter, Defendant City of Miami adopted Ordinance No. 1,000 (the "Zoning Ordinance") that divided the City into 24 geographical areas and specified regulations applicable to property located within each area. National alleges that the Zoning Ordinance changed the City's zoning classifications and reclassified certain zones as Restricted Commercial ("C–1"). According to National, these reclassified zones had the effect of making "some or all of the offsite signs in the effected zones nonconforming with the Zoning Ordinance."[3] On or about March 28, 1991, pursuant to Ordinance No. 10863, the City adopted section 107.2.2(a) of the Zoning Ordinance, which provides as follows:

In any district other than residential, any sign, billboard, or commercial advertising structure which constitutes a non-

**3.** For purposes of the instant case, National has billboard signs, or has attempted to obtain permits for signs, on property located in the following areas: (1) Restricted Commercial ("C–1"), (2) Liberal Commercial ("C–2"), (3) Central Business District ("CBD"), (4) Martin Luther King Boulevard Commercial District ("SD–1"), (5) Design Plaza Commercial–Residential District ("SD–8"), and (6) Latin Quarter Commercial–Residential and Residential District ("SD–14"). (01–3039–CIV Compl. ¶ 17; 02–20556–CIV Compl. ¶ 13.)

conforming characteristic of use may be continued, provided no structural alterations are made thereto subject to the following limitations on such continuance: (a) Any such sign except a roof sign shall be completely removed from the premises within five (5) years from the date it became nonconforming.

The Zoning Ordinance further provides that "[n]onconforming characteristics of use shall be construed as including those where the nonconformity was created by ordinance adoption or amendment, as provided at section 1101.1, as well as those where nonconformity was created by public taking or court order, as provided at section 1101.2." (Zoning Ord., § 1107 at 424.)

In December 2001, National applied for six sign permits with the City of Miami's Building and Zoning Department.[4] Miguel Gutierrez, Chief of Inspector Services for the City of Miami Building Department, testified on August 28, 2002, and explained the process to obtain a building permit within the City of Miami as follows:

You come in with an application. You go to the permit counter. They review the application, the licenses of the qualifier, the address, all the pertinent information. They issue you a plan number, a process number. With that process number, if it's going to be a walk through permit, you go to the walk through desk. You sign in there. You wait for all the reviewers to call you. You go see a reviewer that is needed for that particular job. After you get all the approvals you come back to the permit counter. You are issued a permit number. You go to the cashier and you pay and then you have a permit.

(Tr. of Prelim. Inj. Hr'g at 63:19–64:4, 08/28/02.) The following month, National filed for an additional seventh permit on a property located in a C–2 zone. That application was granted on March 5, 2002.

Jose L. Ferras, the Building Official for the City of Miami, testified about the walk through process as follows:

When an applicant comes through the City of Miami, depending on the particular job code, ... their application would be reviewed by different departments. In the particular case of the sign applications or the sign permit, we have an electrical department that reviews for the electrical requirements. We have a historical department that reviews for the historical requirements. We have a public works department that reviews for the public works requirements, structural, which is my department, reviews for the structural requirements, and then sign, which is zoning, that reviews for the zoning requirement.

(*Id.* at 28:3–13.) Ferras then explained the grievance process available to the applicant in the event an applicant disagrees

---

4. On December 21, 2001, National applied for the following three sign permits:

(1) Permit No.: 010022180—sought to construct "a Billboard Sign" at 950 N.W. 22nd Avenue, Miami, Florida.
(2) Permit No.: 010022178—sought to construct a "sign" at 1073 Spring Garden Road, Miami, Florida.
(3) Permit No.: 010022176—sought to construct an "advertising display" at 301 N.W. 9 Street, Miami, Florida.

On December 26, 2001, National applied for three more permits:

(1) Permit No.: 010022233—sought to construct an "advertising display" at 670 N.W. 44 Street, Miami, Florida.
(2) Permit No.: 010022230—sought to construct an "advertising display" at 5245 N.W. 7 Street, Miami, Florida.
(3) Permit No.: 010022231—sought to construct an "advertising display" at 1330 N.W. 2 Court, Miami, Florida.

On January 9, 2002, National applied for Permit No.: 025004374 for the property located at 3445 N.W. 27th Avenue. This property was zoned as a C–2 district and billboards were allowed in such a zone.

with the recommendation of any department:

A. When a rejection occurs on one or multiple departments, the rejection description or notice is given back to the applicant for them to go ahead and correct the items that are improperly submitted or not accepted by the departments.

\*    \*    \*    \*    \*    \*

A. If the applicant disagrees with one of the rejections of a department, normally they go and address it directly with the department head administrator or director, and try to solve their problems at that level. If they don't, then they would possibly submit their dispute in writing to me.

Q. As Building Official?

A. As Building Official.

Q. If the applicant did submit the dispute in writing to you as Building Official, what would happen?

A. If they disagreed with a department and they felt that they were right or had a valid point, I would then try to get the departments together and try to mitigate or resolve this problem at a local level.

Q. And if you could not resolve it at a local level, what would be the next step, if any?

A. The next step from then would be that they possibly take me to the Board of Rules and Appeal to appeal my decision.

(Tr. of Prelim. Inj. Hr'g at 28:21–24, 29:3–19, 10/28/02.)

Finally, on direct examination, Ferras testified that in his capacity as Building Official, he has the ultimate authority to deny or grant a permit:

Q. As the Building Official, do you have the final and exclusive authority to deny a building permit application?

A. I do.

Q. Can the zoning department deny an application for a building permit?

A. The zoning department can reject an application, but they have no authority, under my permit building application, to deny the application.

Q. This would be true for the other departments within the City of Miami as well, for instance, Public Works?

A. That's correct.

(Tr. of Prelim. Inj. Hr'g at 23:14–24, 10/28/02.) Similarly, Gaston Cajina, the zoning inspector who reviewed National's applications, testified as follows:

Q. As zoning inspector do you have authority to deny a building permit?

A. No.

Q. As zoning inspector do you have the authority to grant a building permit?

A. No.

Q. Who has the authority to grant a building permit?

A. The Building Official.

Q. Does the Building Official also have the authority to deny a building permit?

A. Yes, it does.

Q. Is he the only person within the City of Miami who can deny a building permit?

A. That's correct.

(Tr. of Prelim. Inj. Hr'g at 70:24–71:12, 08/28/02.)

In its Complaint, Plaintiff alleges that on January 8, 2002, after walking through the six applications filed in December 2001, they were "denied" orally by the zoning clerk to whom the applications had been submitted. The lawyers have used the terms "rejection" and "denial" interchangeably. In its January 9, 2003, Order Denying Plaintiff's Motion for Preliminary Injunction, this court held that "[h]ere, the record shows National's six building permits were *not* denied by the only person

who had legal authority to deny them—the Building Official." The Eleventh Circuit affirmed this Order on September 22, 2003. Thus, for purposes of this opinion, this Court finds that the zoning inspector, as per the testimony of the Building Official, has the authority to "reject" an application that can subsequently be resubmitted. The zoning inspector, however, does not have the authority to "deny" an application; only the Building Official can do so.

Joseph H. Little, Director of Real Estate in the Southeast for Viacom Outdoor, Inc.,[5] that he personally walked through two of the six permit applications and that the other four applications were walked through by Defendant's employees Mark Lipman and Tony Chavez. (Tr. of Prelim. Inj. Hr'g at 24:19–25, 08/28/02.) According to Little, as they were walking the applications through, they obtained approvals from each of the departments until they arrived at the zoning department. (Tr. of Prelim. Inj. Hr'g at 15:2–13, 08/28/02.) Little testified that Gaston Cajina "denied" the applications stating that "for [Little's] future benefit signs are not allowed in the C–1 zone. If they had been in the C–2 zone, the applications we submitted were for signs that were too tall for that zone." (Tr. of Prelim. Inj. Hr'g at 15:12, 15–18, 08/28/02.) Chavez and Lipman, the two individuals who walked through the other four permit applications for National, both stated in their respective depositions that Cajina "rejected" the applications. (Chavez Dep. 42:11–43:16; Lipman Dep. 48:24–49:1.) According to Chavez, Cajina was mute, "he got up, went to the computer printout, got it back and handed it to me and says [sic] you have been rejected, read it." (Chavez Dep. 42:20–43:5) Lipman stated that he did not remember exactly what Cajina said, but that "it had something to do with the height or something. but for whatever reason he said because of that, I cannot accept this permit and it is rejected." (Lipman Dep. 49:3–11.)

The acts and statements described above clearly indicate that the permit applications were simply rejected by clerks and were not *denied* by the only person who had authority to deny with finality a building permit, namely, the Building Official, head of the Building and Zoning Department. This Court has previously so ruled in its Order of January 9, 2003 denying National's application for preliminary injunction. Plaintiff appealed this Court's denial of preliminary injunction and the Eleventh Circuit Court of Appeals on September 22, 2003 affirmed this Court decision.

On February 21, 2002, after the permit applications were rejected by the clerk, National filed its three-count Complaint against the City in this case ("National II"), alleging that (1) the City abridged the First Amendment by acting under a void Code that discriminates against Noncommercial Speech, (2) the City abridged the First Amendment by Acting under a licensing scheme that lacks procedural safeguards, and (3) the City abridged the First Amendment by discriminating against Commercial Off–Premise Speech.

This Court entered its Memorandum Opinion and Order Granting Summary Judgment for the Defendant City of Miami on September 25, 2003 in National I. By that decision, the Court determined that National's First Amendment challenges to the Building and Zoning Code of the City of Miami were meritless and upheld the constitutionality of Zoning Ordinance No. 11,000.

5. As previously stated, Plaintiff National Advertising, Inc., is a wholly owned subsidiary of Viacom Outdoor, Inc. *See supra* p. 1283.

The Plaintiff National Advertising Company can, of course, submit again the six building permits here at issue and obtain a final acceptance or denial by the Building Official of the City's Zoning Department.

## II. Procedural Posture

### A. *National II*

On February 21, 2002, National filed the case referred to as National II[6] in response to the City's rejection of the six permit applications National submitted in December, 2001.[7] National filed its Motion for Preliminary Injunction simultaneously with its Complaint. This Court held an evidentiary hearing on the injunction on August 28, and October 28, 2002. On January 9, 2003, this Court denied the injunction on the basis that National did not meet its burden of showing substantial likelihood of success on the merits, and National appealed on January 22, 2003. On September 22, 2003, the Eleventh Circuit affirmed this Court's January 9, 2003, Order denying National's Motion for Preliminary Injunction.

On March 3, 2003, pending resolution of National's interlocutory appeal, the parties filed Cross–Motions for Summary Judgment along with numerous Motions to Compel various discovery, a Motion to Ex-clude, and a Motion to Strike. The Court has ruled on all of the pending motions in National II except for the parties' Cross–Motions for Summary Judgment, which are currently pending before this Court.

### B. *Consolidation of National I and National II under Case No. 01–3039–CIV–King*

On March 19, 2003, upon the parties' Joint Motion, this Court consolidated both National and National II and identified the consolidated action as *National Adv. v. City of Miami*, Case No. 01–3039–CIV–KING. Thus, the Renewed Motion for Preliminary Injunction filed in National I on March 3, 2003, along with the parties' Cross–Motions for Summary Judgment filed in National II on that same date, are currently pending in the Consolidated Case.[8]

## III. Analysis

Judge Middlebrooks set forth an observation in one of his opinions regarding the recent trend of First Amendment litigation involving billboard companies and municipal ordinances. In *Florida Outdoor Adver. v. Boca Raton,* he was confronted with a challenge to a municipal ordinance by a billboard advertising company and he stat-

---

**6.** This cause is before the Court upon the parties' Cross–Motions for Summary Judgment filed March 3, 2003. (01–3039–CIV DE # 47, 53.) On April 3, 2003, Plaintiff National Advertising ("National") filed its Response to the City's Motion. On April 7, 2003, Defendant City of Miami ("the City") filed its Response to National's Motion. On April 11, 2003, the City filed its Reply to National's Motion. On April 14, 2003, National filed its Reply to the City's Motion.

**7.** As stated above, National filed the case referred to as National I Case No.: 01–3039–CIV–King, on July 11, 2001, in response to the City's enforcement proceedings against property owners with whom National had leases to erect and maintain billboards. On July 7, 2003, the parties filed Cross–Motions for Summary Judgment (01–3039–CIV DE ## 112, 116) relating to the factual allegations underlying National I. In order to avoid confusion, the Court has addressed the National I motions in a separate order.

**8.** Moreover, on July 1, 2003, National filed its Motion for Discovery Status Conference, for Protective Order Limiting or Ending Discovery, and for Reconsideration of Prior Discovery Orders. Finally, on July 3, 2003, the deadline for motion practice as set forth in this Court's Pretrial Conference Order, the parties filed their second Cross–Motions for Summary Judgment, along with the City's Motion for Order Requiring Compliance with Discovery, and for Sanctions. All of these recently filed motions are also currently pending before this Court.

ed as follows: "[t]his is another in series of cases brought by outdoor advertising companies against municipalities alleging violation of the First Amendment. The now familiar strategy is to apply for a permit for erection of a billboard knowing full well that the permit will be denied under the city's existing sign ordinance but also aware that the ordinance is subject to legal attack." 266 F.Supp.2d 1376 (S.D.Fla. 2003). The instant action presents a similar constitutional challenge and strikingly similar factual pattern.

In this case, the City argues that it is entitled to summary judgment on three grounds: (1) National has failed to present an actual case or controversy ripe for judicial review under Article III, § 2, clause 1, U.S. Const.; (2) National failed to establish standing; and (3) National's claims are moot. In this Order, the Court will address the City's argument that National's claims are not ripe for judicial review. According to the City's argument, this Court should apply the Eleventh Circuit's rationale in *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586 (11th Cir.1997) to the instant case because:

> National, just like Digital, has "in its haste to preserve its perceived First Amendment rights, failed to present a mature claim for review." [*Digital*, 121 F.3d] at 590. National, like Digital, "did not pursue its claim with requisite diligence to show that a mature case or controversy exists." *Id.* at 590. National, like Digital, has not obtained final agency action. [Footnote omitted] National, like Digital, has shown no hardship from withholding judicial review at this time and requiring a final agency action. Thus, like Digital, National's claims are not ripe for judicial review.

In its Response, National argues that *Digital Properties* is distinguishable from the instant case, and that as a result it has the requisite standing to challenge the Zoning Ordinance in federal court. This Court disagrees.

■■■■■ Federal courts are courts of limited jurisdiction, pursuant to Article III, Section 2 of the United States Constitution in that the courts can only render decisions in actual cases and controversies. Thus, "[b]efore rendering a decision, ... every federal court operates under an independent obligation to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based .." *Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 759 (11th Cir.1991) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)). The Eleventh Circuit has stated that "[t]he ripeness doctrine involves both jurisdictional limitations imposed by Article III's requirement of a case or controversy and prudential considerations arising from problems of prematurity and abstractness that may present insurmountable obstacles to the exercise of the court's jurisdiction, even though jurisdiction is technically present." *Johnson v. Sikes*, 730 F.2d 644, 648 (11th Cir.1984). When determining whether a case is ripe, a court must specifically consider "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Digital Prop., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir.1997). In cases challenging a governmental act, the issues are fit for judicial review if "a plaintiff show[s] he has sustained, or is in immediate danger of sustaining, a direct injury as the result of that act." *Hallandale Prof'l Fire Fighters*, 922 F.2d at 760. While this requirement is interpreted broadly in a First Amendment context, it cannot be ignored. *Id.*

In *Digital*, the Eleventh Circuit addressed whether a First Amendment chal-

lenge to a city's zoning code was ripe for judicial consideration. In that case, the plaintiff Digital Properties, Inc., sought to construct an adult video and bookstore in a general business district that allowed for bookstores, newsstands, and theater and motion picture houses. *Digital*, 121 F.3d at 587. Digital's representatives attempted to file copies of the remodeling plans with the city. *Id.* at 588. At the zoning department, the representatives spoke with an assistant zoning technician who, upon hearing the nature of the business Digital sought to open, allegedly told the representatives that the City did not allow such use and refused to accept the plans. *Id.* The zoning technician further instructed the representatives to speak with the city's Director of Building and Zoning because "the scope of her job did not encompass accepting building plans over the counter." *Id.* at 588–89. Digital never contacted the Director, but instead, filed suit in district court five days later. *Id.* at 589. Upon the city's motion, the district court dismissed Digital's action, and Digital appealed. *Id.* On appeal, the Eleventh Circuit affirmed the lower court's ruling and held that the district court lacked subject matter jurisdiction over Digital's claim because it was not ripe, and further noted as follows:

> Upon reaching the zoning department, ... Digital waited only long enough to have one supervisory employee "confirm" its assumption. At a minimum, Digital had the obligation to obtain a conclusive response from someone with the knowledge and authority to speak for the City regarding the application of the zoning scheme to Digital's proposal. [The technician's] alleged statement to Digital's representatives that "the City of Plantation does not allow such use," simply is not sufficient to create a concrete controversy.

*Id.* at 590. Therefore, the Eleventh Circuit held that Digital's "action only consti-

tutes a potential dispute, and this court has neither the power nor the inclination to resolve it." *Id.* 590–91

Following the holding of the Eleventh Circuit in *Digital*, this Court finds that the instant case fails to present an issue that is ripe for judicial determination. National, like the plaintiff in *Digital*, not only failed to apprise itself of the administrative remedies available, but even failed to await the City's final denial of the permits. According to Juan Gonzalez, Zoning Administrator at the time National filed its permit applications, Cajina's rejection of the permit application did not constitute final action by the City. (Gonzalez Dep. at 4:4–20, 108:17–109:5.) Specifically, Gonzalez stated that the Building Official of the City of Miami is the person with the authority to deny issuance of a permit. (Gonzalez Dep. at 108:17–24.) Gonzalez indicated that Cajina's rejection of the permit applications is not the final rejection by the Zoning Department because the applicant could go to the zoning administrator for the zoning division in which the applicant is applying. (Gonzalez Dep. at 109:1–5.) In fact, according to Gonzalez, "[a] rejection by the zoning plan reviewer is given with the expectation that the property owner will correct any problems or deficiencies in the permit application and then return to the zoning plan reviewer for another review." (Gonzalez Decl. ¶ 5.)

Furthermore, Jose L. Ferras, the Building Official for the City of Miami, unequivocally stated at the Preliminary Injunction Hearing held on October 28, 2002, that rejection by a department does not constitute denial of a permit because the Building Official is the only person who has the authority to grant or deny permits. *See supra* pp. 1285–86. Similarly, Cajina testified at the same hearing that as a zoning inspector he does not have the authority to grant or deny a permit because the Build-

ing Official is the only person within the City who has that authority. *See supra* pp. 1286–87. In fact, Lipman, one of the individuals who walked through two of the permits for National, stated in his deposition that "[i]t is my understanding that the zoning official works with the building official and is one of those stops along the way on permit approval in that process." (Lipman Dep. 47:11–14.) Lipman further stated that "[m]y understanding would be that any department could reject." (Lipman Dep. 46:11–12.) In response to that statement Lipman was asked "[i]s that an official denial of a building permit?" and he stated, "No. I would say an official denial is when we have something in writing that says its denied." (Lipman Dep. 46:13–17.) Therefore, this Court finds that the record is devoid of any evidence showing that National attempted to (1) discuss the zoning plan examiner's rejection of the permit applications with a supervisor in the Zoning Department or the Zoning Administrator, or (2) obtain a final decision by the Building Official of the City of Miami.

Moreover, besides seeking a final denial of the permit, National had other remedies available that could have led to a resolution of this case without costly and unnecessarily burdensome litigation. According to Gonzalez, National could have (1) revised the height and proposed location of the billboards, and/or (2) sought rezoning of the property. (Gonzalez Decl. ¶ 7.) In fact, National's seventh permit was granted in March 2003 because it sought to construct the billboard in the C–2 zone where such structures are allowed. *See supra* note 4. The record before this Court shows that National did not avail itself of these remedies. Instead, Little himself testified before this Court that after receiving the rejections from zoning he immediately went to National's attorneys' office and left the permit applications there without taking the

applications back to the City's Building Department. (Tr. of Prelim. Inj. Hr'g at 25:6–19, 8/28/02.) Moreover, Lipman stated that he had instructions from Little to simply walk the applications through the process, get any denials in writing and go home. (Lipman Dep. 46:2–6, 49:21–50:2.) Neither Lipman nor Chavez did what in their experience was normally done when an application was rejected by a department; namely attempt to work the problem out with the government officials. (Lipman Dep. 49:12–50:2); Chavez Dep. 43:18–44:18.

This case represents National's rush to the courthouse to file a Complaint in a case where the City did not have the opportunity to make a final decision on the permit applications in question. As a result, the City is being dragged through expensive and contentious litigation on the oral conclusion of a zoning plans examiner that National's six permit applications did not comply with the Zoning Ordinance. Therefore, this Court finds that the instant case, as it relates to the rejection of the permit applications filed in December 2001, fails to present a ripe controversy because National failed to exhaust its remedies and, like the plaintiff in *Digital,* failed to obtain "a binding conclusive administrative decision."

Finally, National has also failed to produce evidence illustrating how its exhaustion of administrative remedies or its attempt to obtain a final agency determination would force the parties to endure hardship. Thus, this Court finds that National's claims, originally filed in National II and premised on the City's denial of the six permit applications filed in December 2001, do not present an actual case or controversy that is currently ripe for judicial review.

## IV. Conclusion

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that the City's Motion for Summary Judgment be, and the same is hereby, GRANTED. It is further

ORDERED and ADJUDGED that National's Motion for Summary Judgment be, and the same is hereby, DENIED.

### *FINAL JUDGMENT*

Pursuant to Fed.R.Civ.P. 58, and the Court's September 26, 2003 Memorandum Opinion Granting Summary Judgment, it is

ORDERED and ADJUDGED that judgment is entered in favor of Defendant City of Miami and against Plaintiff National Advertising Company. This case is DISMISSED with prejudice. It is further

ORDERED and ADJUDGED that any pending motions are hereby DENIED as moot. The Court retains jurisdiction of the above-styled action to determine fees, costs, and expenses, as are appropriate under the law, incurred by Defendant in defending this action.